Bessie **PATTERSON** a/k/a Bessie P. Allisson

v.

**CITY OF CHESTER** et al.

Civ. A. No. 74–2920.

United States District Court, E. D. Pennsylvania.

Feb. 21, 1975.

11. This disposition moots the issue of whether discovery should go forward.

David A. Scholl, Chester, Pa., for plaintiff.

Joseph F. Battle, Jr., Chester, Pa., for defendants.

## MEMORANDUM OPINION

WEINER, District Judge.

This § 1983 action involves the summary dismissal by the City of Chester of an employee in the city's Bureau of Health. It is alleged that the plaintiff was dismissed without a hearing and in violation of her First Amendment rights. It is also alleged that the dismissal violates Pennsylvania's "Anti-Macing" Act. Defendants have presently moved to dismiss the action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure alleging: (1) that § 1983 does not provide jurisdiction nor is there $10,000 in controversy to permit

general federal question jurisdiction; (2) that plaintiff was not entitled to a pre-termination hearing; (3) that there is no foundation for the claim that First Amendment rights were violated; and (4) that the court does not have pendant jurisdiction over the state law claim and that even if it did, the claim is without merit.

The general procedural and factual background of this case will be briefly set forth. Plaintiff was permanently employed for a number of years as a secretary in the Bureau of Health for the City of Chester. During this period she became the leader of a local consumer protection citizens group. Her supervisors were aware of her activities and had on several occasions permitted her to take time off to pursue her consumer organization activities. On October 24, 1974, she led a march to protest certain practices of the Philadelphia Electric Company. As a result she was late getting back from her lunch break. The next day she had an acrimonious meeting with Mr. Sharp, the Director of Public Safety, where her tardiness of the previous day was said to be the culmination of a pattern of misconduct which now required her dismissal. Her dismissal was made effective immediately and she commenced this action shortly thereafter.

Initially plaintiff sought immediate reinstatement by means of a temporary restraining order. After a conference with the court, the parties agreed that the City of Chester would as soon as possible conduct a full evidentiary hearing to determine whether plaintiff was properly terminated for cause. On November 20, 1974, the hearing was held before Mayor Nacrelli and two City Council members. A finding was made that the dismissal was justified and that the evidence adduced at the hearing substantiated her dismissal on the grounds of excessive lateness, insufficient and poor work production, and being a disruptive influence in the office. Thereafter, this motion was filed.

## I. JURISDICTION

We will first address the question of whether the court has jurisdiction over the City of Chester. If the complaint states a cause of action under 42 U.S.C. § 1983, then jurisdiction over the constitutional claims is conferred by 28 U.S.C. § 1343(3), otherwise plaintiff must satisfy the requirements of general federal question jurisdiction under 28 U.S.C. § 1331.[1] The Supreme Court has specifically held that a municipality cannot be sued under § 1983, regardless of whether damages or injunctive relief is sought. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Therefore, jurisdiction, if any, must lie under § 1331.

Defendant challenges jurisdiction under § 1331 contending that the requisite $10,000 amount in controversy is not present. Plaintiff's salary was al-

---

[1]. Plaintiff argues that an alternative ground for jurisdiction would be to couple 28 U.S.C. §§ 1343(3) and 1343(4) with causes of action which derive directly from the First and Fourteenth Amendments. See Skehan v. Board of Trustees of Bloomsburg State Col., 501 F.2d 31, 44 (3d Cir. 1974). § 1343(4) is clearly unavailable for this purpose as its language requires that the cause of action be one established by "any Act of Congress." While § 1343(3) is not similarly restricted, plaintiff's argument would require us to give § 1343(3) a jurisdictional life independent of 42 U.S.C. § 1983. This position is not supported by its legislative history which indicates that § 1983 and § 1343(3) were origi-

nally one statute and were separated in 1874 merely for the convenience of codification. See Note, 87 Harv.L.Rev. 252, 254 n. 15 (1973). Furthermore, § 1343 is premised with the caveat that it is to provide jurisdiction only for actions "authorized by law." Together these two factors have been construed to make 1343(3) a jurisdictional avenue only for actions under § 1983. See, e. g., United Farm. of Fla. H. Proj. Inc. v. City of Delray Beach, 493 F.2d 799, 802 n. 1 (5th Cir. 1974); Note, 87 Harv.L.Rev., supra. We believe that this is a sound principle and decline plaintiff's invitation to extend § 1343(3).

leged to be in excess of $6,000 per annum and she is also seeking punitive damages. Plaintiff's claim for compensatory damages is necessarily increasing daily and will continue to do so until the ultimate termination of this litigation unless she is reinstated. When this fact is considered along with plaintiff's claim for punitive damages, we cannot say to "a legal certainty" that plaintiff's potential recovery will not exceed $10,000. See Saint Paul Mercury Indemnity Co. v. Red Cab Company, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1937); Jaconski v. Avisun Corp., 359 F.2d 931, 934–935 (3d Cir. 1966).

 Having found that jurisdiction over the City of Chester is proper, we must determine whether a cause of action is stated despite the unavailability of § 1983. Plaintiff contends that a cause of action can be derived directly from the constitutional guarantees of the First and Fourteenth Amendments. Plaintiff analogizes this proposition to the case of Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), where the Court found that a federal remedy for damages could be based directly on the Fourth Amendment. The use of the equitable power of the federal courts against municipalities in the manner suggested by plaintiff has been implicitly approved by our Circuit Court and expressly applied by one of our brothers in this court. Skehan v. Board of Trustees of Bloomsburg State Col., 501 F.2d 31, 44 (3d Cir. 1974); Maybanks v. Ingraham, 378 F.Supp. 913, 914–916 (E.D. Pa.1974) (Lord, Ch. J.). See also, United Farm. of Fla. H. Proj. Inc. v. City of Delray Beach, 493 F.2d 799, 802–803 (5th Cir. 1974); Dahl v. City of Palo Alto, 372 F.Supp. 647, 649–651 (N.D. Cal.1974); Note, 87 Harv.L.Rev. 252, 261–262 (1973). While this question is certainly not one free of doubt, we believe a presumption in favor of provid-

ing a federal remedy should exist when federally protected rights have allegedly been violated. Therefore, we will follow the precedent already set in this court and permit the plaintiff to assert a cause of action based directly on the First and Fourteenth Amendments of the United States Constitution.[2]

██ The individual defendants also challenge subject matter jurisdiction over them. They contend that § 1983 and § 1343(3) are inapplicable because any relief awarded against them would be equivalent to ordering relief against the city which cannot be reached under § 1983. See *Kenosha, supra.* A similar argument that § 1983 cannot be used against state officials who act within the scope of their authority was recently rejected by our Circuit Court. Rochester v. White, 503 F.2d 263, 266–267 (3d Cir. 1974). § 1983 has always been used to redress the deprivation of constitutional rights by state and local officials and to accept defendants' argument would eliminate most of its potency. In any event, as we have found the city subject to our jurisdiction under § 1331 and as the identical federal claims are also made against the individual defendants, these defendants would a fortiori also be subject to § 1331 jurisdiction. Our conclusion is that the individual defendants are properly before the court either under § 1983 and § 1343(3) or under § 1331.

## II. PLAINTIFF'S RIGHT TO A PRE-TERMINATION HEARING

Plaintiff argues that she had the right to a hearing prior to her dismissal. See Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The crucial question in determining whether plaintiff had such a right is whether under state law plaintiff has a property interest in her continued em-

---

2. We note that problems of sovereign immunity are not present because the Eleventh Amendment has been held inapplicable to municipalities. See Markham v. City of

NewPort News, 292 F.2d 711 (4th Cir. 1961); Maybanks v. Ingraham, *supra*, 378 F.Supp. at 916 n. 2.

ployment. See *Roth,* supra at 577, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Skehan,* supra, 501 F.2d at 37–38. In *Skehan,* the court set forth guidelines for determining whether a state employee had been improperly dismissed without a hearing:

> [T]he appropriate analysis is to determine, *under applicable state law,* the nature and extent of the contract right and, if the contract right has been terminated other than by expiration of its term, to consider whether the method of termination comported with fourteenth amendment procedural due process. (emphasis added).

*Skehan,* supra, 501 F.2d at 38.

Defendants contend that under Pennsylvania law non-civil service employees of third class cities such as Chester are employees at will and can be discharged at any time without cause regardless of any contractual provisions between the city and the employee. See Naef v. Allentown, 424 Pa. 597, 227 A.2d 888 (1967); Scott v. Philadelphia Housing Authority, 402 Pa. 151, 166 A.2d 278 (1960). In the *Naef* case, the court expressly held that under 53 P.S. § 35901 the city council of a third class city had the power to dismiss the city solicitor and his assistants regardless of the existence of a long-term employment contract. *Naef,* supra, 424 Pa. at 600–601, 227 A.2d 888.

Plaintiff argues that her status as a permanent rather than a probationary employee and the fact that she has been employed in that capacity for four years gives her a property interest deserving of constitutional protection.[3] However, in both *Naef* and *Scott,* municipal employees with fixed term contracts were found to have no right to their continued employment under state law regardless of their contracts. To support her contention plaintiff refers us to the case of Commonwealth of Pa. ex rel. Rafferty v. Philadelphia Psychiatric Hospital, 356 F.Supp. 500 (E.D.Pa.1973). The

problem with *Rafferty* is that it merely assumes in a footnote without serious discussion that a Pennsylvania municipal employee hired for an open ended term has a significant property interest in continued employment. *Rafferty,* supra at 509 n. 10. While prior decisions of this court should be accorded great weight, we believe that this aspect of the *Rafferty* decision did not receive adequate consideration by the court and therefore its conclusion on this point is not persuasive.

■ That a low level public employee can be dismissed without cause and without a hearing is not a very comforting fact. However, if this is the command of state law then we are required to permit it because it is state law and not the Constitution which defines the scope of the employment relationship. See, e. g., Hirsch v. Green, 368 F.Supp. 1061, 1065–1067 (D.Md.1973). As we must conclude that under the present state of Pennsylvania law the plaintiff was an employee at will, her claim that she was improperly dismissed without a pre-termination hearing is without merit.

## III. PLAINTIFF'S FIRST AMENDMENT RIGHTS

■ Plaintiff also contends that her dismissal was improper because it was motivated by her activities as a vocal advocate of consumer rights. She also alleges that she was dismissed for refusing to continue her contributions to the Republican Party. While plaintiff may not have any property interest in her continued employment, she does have a constitutional right not to be terminated merely because of the exercise of her First Amendment rights. Perry v. Sindermann, supra, 408 U.S. at 596–598, 92 S.Ct. 2694.

Defendants contend that the record of the hearing on November 20, 1974, conclusively establishes that her dismissal

---

3. Plaintiff alleges that Chester employs two categories of employees: probationary and permanent. She alleges that after several months of being a probationary employee she was promoted to permanent status.

was not improperly motivated. As the determination of this issue requires us to go beyond the face of the pleadings, this portion of defendants' motion shall be treated as one for summary judgment. Therefore we must determine whether based on the record of the hearing there is no genuine issue of fact as to the reason for plaintiff's dismissal.

We have closely reviewed the sworn testimony and documentary evidence presented at the hearing and have concluded that issues of fact remain to be tried. At the hearing, plaintiff testified that during the meeting when she was fired defendant Sharp told her that "he wasn't going to have newspapers and radio stations calling him about City employees on picket lines when he didn't know anything about it." Notes of transcript at 229, Chester City Council hearing of November 20, 1974, Exhibit B, filed December 19, 1974. Defendant Sharp's testimony was that plaintiff was forty-five minutes late getting back from her lunch break and that this tardiness was the "straw that broke the camel's back." Exhibit B, supra, N.T. at 82. He indicated that plaintiff had been given previous warnings about her unsatisfactory performance and that a number of other employees in the Health Department had been urging her dismissal. Exhibit B, supra, N.T. at 70.

■ While plaintiff does not present an exemplary employment record, the scope of our inquiry is limited to whether there is a factual dispute as to the reasons for her dismissal. She alleges that one reason was because the city officials were irritated with her community activities and her version of the meeting with defendant Sharp lends some support to this theory. Furthermore, defendant Sharp stated that the impetus to the meeting was his observation of plaintiff marching near the office with bullhorn in hand. Exhibit B, supra, N.T. at 68–69. Despite defendants denial that plaintiff's dismissal was improperly motivated, we believe that there is a sufficient factual dispute at least on this point to require that summary judgment be denied.

Plaintiff's other allegation that her dismissal resulted from her discontinuing her contributions to the Republican Party is also subject to factual dispute. Plaintiff testified that she had several meetings with defendant Sharp where political contributions were requested and where she was told that failure to make such contributions could affect her job. Exhibit B, supra, N.T. at 233–234. Defendant Sharp while denying these allegations, acknowledges receipt of a letter from plaintiff where she indicated that she could no longer make her political contributions. Exhibit B, supra, N.T. at 72. However, an issue not raised by either side seriously concerns us: does the discharge of a public employee for failing to make political contributions offend the constitutional guarantees of the First and Fourteenth Amendments? Compare Illinois State Employees Union, etc. v. Lewis, 473 F.2d 561 (7th Cir. 1972) with Alomar v. Dyer, 447 F.2d 482 (2d Cir. 1971). We do not think that we should attempt to answer such a question without benefit of the respective views of both parties and therefore we will defer a decision on this point until the time of trial.

## IV. PLAINTIFF'S STATE LAW CLAIMS

■ As we have concluded that jurisdiction over all defendants exists with regard to plaintiff's constitutional claims, it follows that pendant jurisdiction over her state law claims is proper. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiff's contention is that because her firing was based on her failure to make a political contribution it was in violation of Pennsylvania's "Anti-Macing" law. As we have previously found that these allegations present disputed questions of fact, it would seem that this is an issue ripe for trial. However, there is again a problem not raised by either side that trou-

bles us. The relevant portion of state law upon which plaintiff relies provides only that the solicitation of political contributions from public employees by other public officers shall be unlawful and subject to criminal penalties. 25 P.S. §§ 2374, 2375. There is no provision for civil penalties nor are we aware of Pennsylvania judicial decisions construing the act to provide civil remedies. Not having the benefit of the views of learned counsel on this matter, we will also defer the question of whether this count shall be dismissed until the time of trial.