Alan Frank, Petitioner *v.* Ethel Allen, D.O., Secretary of the Commonwealth of Pennsylvania, Respondent.

394

Argued September 12, 1979, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt, DiSalle, Craig and MacPhail.

*Stanley A. Uhr*, with him *Pechner, Dorfman, Wolffe, Rounick & Cabot*, for petitioner.

*R. Darryl Gilchrist*, Assistant Attorney General, with him *Edward L. Biester, Jr.*, Attorney General, for respondent.

Opinion by President Judge Bowman, October 10, 1979:

A petition for review invoking our original jurisdiction,[1] an answer to the petition followed by a stipu-

---

[1] Pursuant to Section 761(a)(1) of the Judicial Code, 42 Pa. C.S. §761(a)(1).

lation of facts and petitioner's motion for summary judgment pose another controversy over the interpretation and application of provisions of our Constitution relating to the election of judges and the appointment power of the Governor to fill vacancies in judicial office.[2]

On June 15, 1979, Judge (now Justice) JOHN P. FLAHERTY, JR. resigned his judgeship on the Allegheny County Court of Common Pleas to become, by appointment, a Justice of the Supreme Court of Pennsylvania. Thereafter, in response to a request by petitioner, respondent declined to certify this vacancy as one to be filled by the elective process for the municipal election year 1979 culminating in the municipal election to be conducted hereafter on November 6, 1979. Rather, the respondent advised petitioner that the vacancy was one to be filled by gubernatorial appointment. Hence this suit. We view the position taken by respondent as a governmental determination affording a basis for one to invoke our original jurisdiction. Pa. R.A.P. 102, 1511 and 42 Pa. C.S. §761(a)(1).

The Pennsylvania Election Code (Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §2601 *et seq.,* is a comprehensive statute establishing the elective process in Pennsylvania encompassing a system of party primaries, party candidacies to be selected in party primaries, candidacy of independent candidates, the election of candidates for public office by the voters and a host of related subjects. As mandated by the Constitution, Pa. Const. art. V, §13(a), art. VII,

---

[2] In a span of less than five years in various factual contexts, this controversy has been the subject of opinions in *Barbieri v. Shapp (Shapp II),* 476 Pa. 513, 383 A.2d 218 (1978) ; *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329 (1977) ; *Barbieri v. Shapp (Shapp I),* 470 Pa. 463, 368 A.2d 721 (1977) ; *Berardocco v. Colden,* 469 Pa. 452, 366 A.2d 574 (1976) ; *Barbieri v. Thornburgh,* 42 Pa. Commonwealth Ct. 1, 400 A.2d 653 (1979).

§§2, 3, the Code provides for municipal elections in odd numbered years and for the election of judges of the several judicial districts in municipal election years.

As applied to the year 1979, it is a municipal election year in which the elective process, pursuant to the provisions of the Code, was initiated with respect to candidates for party primaries in April; the party primaries were held on May 15, 1979, and the municipal election will be conducted on November 6, 1979, at which time the voters will elect to an array of public offices a host of successful primary candidates and independent candidates.

Within the framework for effectuation of the elective process and Judge FLAHERTY's resignation on June 15, 1979, should the vacancy thus created be filled in this fall's municipal election or is the vacancy properly one for gubernatorial appointment?

As in prior cases in which this issue was addressed in varying factual contexts,[3] the germane provisions of the Pennsylvania Constitution are Sections 13(a) and (b) of Article V, which provide:

Section 13. (a) Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

(b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor. The appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which

---

[3] *See* cases cited note 2, *supra.*

shall be by a majority. The person so appointed shall serve for an initial term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs.

Petitioner also cites and relies in part upon the provisions of Section 8(b) of Article IV of our Constitution also directed to the appointing power of the Governor but concedes that if inconsistent with Article V, Sections 13(a) and (b), the latter must control. As we view Article IV, Section 8(b) to be applicable to judicial vacancies only when it has been determined that a particular judicial vacancy is one subject to gubernatorial appointment, its application begs the issue here raised. Thus we remain confronted with the application of the provisions of Article V, Sections 13(a) and (b) to the facts of this case as these provisions have heretofore been construed by our Supreme Court.

Not unexpectedly, both parties cite and rely upon *Shapp II, supra* note 2, *Berardocco v. Colden, supra* note 2, and petitioner also cites *Leedom v. Thomas, supra* note 2.

Our analysis of these cases and others[4] leads us to the conclusion that inasmuch as the resignation of Judge FLAHERTY from the bench of the Court of Common Pleas of Allegheny County on June 15, 1979, created an unexpected vacancy on that date, which date fell long after the 1979 municipal election year elective process had begun and after the conduct of the party primaries on May 15, 1979, this vacancy is properly subject to gubernatorial appointment under Article V, Section 13(b) of the Pennsylvania Constitution.

Although the cited decisions of our Supreme Court make it quite clear that the election of judges is to be

---

[4] *See* cases cited note 2, *supra.*

preferred over the gubernatorial power of appointment, and election should be preferred whenever possible, these public policy concerns are preeminent only if the certainty of vacancy is present before commencement of the elective process.

Thus, whenever possible, election is the constitutionally prescribed method for filling judgeships in Pennsylvania. The appointment procedure of section 13(b) is a stopgap to fill seats that unexpectedly fall vacant. As this Court said unanimously in Berardocco v. Colden, 469 Pa. 452, 459, 366 A.2d 574, 577 (1976) (footnote omitted):

'whenever possible, judicial officers shall be elected by a complete electoral process. The appointive process of section 13(b) was intended to fill a judicial vacancy only until the office could again be filled by a popularly elected officer. The "ten month" provision was designed simply to insure that the electoral process would be complete with a regularly conducted primary election, as well as a municipal election.'

We reaffirmed this doctrine in Leedom v. Thomas, supra, emphasizing that 'section 13(b) ... "was not intended to frustrate the electoral process." ' 473 Pa. at 199, 373 A.2d at 1331-32. Thus, we must construe this constitutional provision so that its effect is consistent with the intent we have found it to express.

When a judge reaches mandatory retirement age less than ten months before a municipal election, or between Election and Inauguration Days, a regularly conducted election to fill the judge's seat may be held without waiting two years for the next municipal election. The judge's mandatory retirement date is as easily

and as certainly known in advance as the date upon which the regular term of a nonretiring judge will expire. Potential candidates, election officials and the voting public have sufficient notice to prepare for the election, even though the judge has not yet retired at the time the election process begins. Delaying such an election two years plainly frustrates the intent of the framers and of the People of the Commonwealth, who adopted section 13 intending that whenever possible judges are to be elected. We must therefore conclude that the 'ten month' provision of section 13(b) does not apply where the end of a fixed term—expiration of the judge's elected term or attainment of mandatory retirement age—produces the vacancy.

*Shapp II, supra* note 2, at 520-21, 383 A.2d at 222.

Accordingly, we shall deny petitioner's motion for summary judgment and enter summary judgment in favor of respondent.

#### Order

Now, October 10, 1979, petitioner's motion for summary judgment is denied. Summary judgment in favor of respondent and against petitioner is hereby entered.