## Gobe v. Board of Elections of Chester County

*Joseph C. Kohn,* for plaintiffs.
*John Halsted* and *Kate Conner-Garand,* for defendant Board of Elections.
*Joseph E. Brion,* for intervenor.

JOYNER, *J.,* October 6, 1989 — The instant matter, which was brought in both equity and law pursuant to this court's original and appellate jurisdcition under sections 931 and 933 of the Judicial Code, 42 Pa.C.S. §§931 and 933, seeks injunctive and declaratory relief preventing the defendant Board of Elections from placing the office of District Justice 15-3-04 on the ballot for the November 1989 municipal election. In accordance with the parties' stipulation of October 4, 1989, we hereby make the following

## FINDINGS OF FACT

(1) Eugene DiFilippo Jr. was elected to the office of district justice in District 15-3-04 in November 1987 for a term to expire in January 1994.

(2) District Justice DiFilippo resigned his commission on July 19, 1989.

(3) The Administrative Office of the Supreme Court of Pennsylvania notified Governor Casey of the vacancy in the office in District 15-3-04 on or about August 17, 1989.

(4) On August 9, 1989, Governor Casey nominated Charles DeTulleo, Esq., to fill the vacancy for a term ending January 1992.

(5) The Secretary of the Commonwealth has not certified the vacancy for election to the Chester County Board of Elections.

(6) On February 13, 1989, the Secretary of the Commonwealth certified to the Chester County Board of Elections those offices for which candidates are to be nominated at the municipal primary and elected in the November election.

(7) The position of district justice for District 15-3-04 was not certified for election in November 1989 by the Secretary of the Commonwealth on February 13, 1989.

(8) On September 11, 1989, William Boehm, the Commissioner of the Bureau of Elections of the Commonwealth wrote to Commissioner Patricia M. Baldwin of the board stating, inter alia, that the vacancy "cannot be placed on the ballot."

(9) On September 21, 1989, the Chester County Board of Elections voted to place the vacancy on the ballot for the municipal election in November 1989.

(10) On September 22, 1989, Commissioner Boehm sent a letter to Commissioner D.T. Marrone as chairman of the board, with copies to the other members of the board, stating that "the County Board of Elections clearly has no authority to require an election to be held in the office of district justice."

(11) Since 1981, the Chester County Board of Elections has never before certified the office of district justice for election without first receiving a certification from the Secretary of the Commonwealth to place the office on the ballot.

(12) The district justice vacancy in District 15-3-04 occurred 15 weeks and six days (less than four months) before the municipal election.

## DISCUSSION

Essentially, this case presents a single issue for determination which is, from all appearances, one of first impression. Specifically, we are called upon to resolve what appears to be a conflict between the provisions of Article IV, section 8(b) and Article V, section 13(b) of the Pennsylvania Constitution concerning the proper procedure for filling a vacancy which arises in the office of a district justice less than 10 months before the next regular municipal election.

In addition, defendant contends that inasmuch as a District Justice Court is *not* a court of record, there is no requirement that the Secretary of the Commonwealth first certify the vacancy under 25 P.S. §2621(c) before it can be placed on the ballot. Consequently, defendant argues, it followed the correct procedure in notifing the political parties of the vacancy in District 15-3-04, and directing them to file their nominations for the office within 50 days and further by placing the office on the November 7, 1989 ballot. See 25 P.S. §§2953, 2642(h). While we agree that there exist numerous apparent ambiguities in the state constitution and the Election Code, we nevertheless find that the interpretations of the appellate courts of this commonwealth have consistently interpreted and applied Article V, section 13 in cases involving judicial and magisterial vancancies and we are similarly bound by those rulings in this case. The conflicting provisions read, in relevant part, as follows:

(Article 4)

"§8. Appointing power —

"(b) The governor shall fill vacancies in offices to which he appoints by nominating to the Senate a proper person to fill the vacancy within 90 days of

the first day of the vacancy and not thereafter. The Senate shall act on each executive nomination within 25 legislative days of its submission. If the Senate has not voted upon a nomination within 15 legislative days following such submission, any five members of the Senate may, in writing, request the presiding officer of the Senate to place the nomination before the entire Senate body whereby the nomination must be voted upon prior to the expiration of five legislative days or 25 legislative days following submission by the governor, whichever occurs first. If the nomination is made during a recess or after adjournment sine die, the Senate shall act upon it within 25 legislative days after its return or reconvening. If the Senate for any reason fails to act upon a nomination submitted to it within the required 25 legislative days, the nominee shall take office as if the appointment had been consented to by the Senate. *The govenor shall in a similiar manner fill vacancies in the offices of auditor general, state treasurer, justice, judge, justice of the peace and in any other elective office he is authorized to fill. In the case of a vacancy in an elective office, a person shall be elected to the office on the next election day appropriate to the office unless the first day of the vacancy is within two calendar months immediately preceding the election day in which case the election shall be held on the second succeeding election day appropriate to this office.*" (emphasis supplied)

(Article 5)

"§ 13. Election of justices, judges and justices of the peace; vacancies —

"(b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the governor. The appointment shall be with the advice and consent of two-thirds of the members

elected to the Senate, except in the case of justices of the peace which shall be by a majority. The person so appointed shall serve for a term ending on the first Monday of January following the next municipal election more than 10 months after the vacancy occurs or for the remainder of the unexpired term, whichever is less, except in the case of persons selected as additional judges to the Superior Court, where the General Assembly may stagger and fix the length of the initial terms of such additional judges by reference to any of the first, second and third municipal elections more than 10 months after the additional judges are selected. The manner by which any additional judges are selected shall be provided by this section for the filling of vacancies in judicial offices."

Section 2621 of the Election Code, in turn provides:

"The Secretary of the Commonwealth shall exercise in the manner provided by this act all powers granted to him by this act, and shall perform all the duties imposed upon him by this act which shall include the following:

. . .

"(c) To certify to county boards of elections for primaries and elections the names of the candidate for President and Vice President of the United States, presidential electors, United States senators, representatives in Congress and all state offices including senators, representatives, and judges of all courts of record, and delegates to national conventions, and members of state committees, and the form and wording of constitutional amendments or other questions to be submitted to the electors of the state at large."

As a general rule, the Constitution must be interpreted in its popular sense as understood by the voters who adopted it, and related provisions of the Constitution must be read in conjunction with one another so as to properly ascertain their meaning. *Berardocco v. Colden,* 469 Pa. 452, 366 A.2d 574 (1976), citing *Breslow v. Baldwin Township School District,* 408 Pa. 121, 182 A.2d 501 (1962): *Weiss v. Ziegler,* 327 Pa. 100, 193 Atl. 642 (1937). Because the Constitution is an integrated whole, effect must be given to all of its provisions wherever possible. *Cavanaugh v. Davis,* 497 Pa. 351, 440 A.2d 1380 (1982). Where, however, there is any overlapping or any apparent ambiguity or real conflict or inconsistency, the specific must prevail over the general. *Commonwealth ex. rel. Specter v. Vignola,* 446 Pa. 1, 285 A.2d 869 (1971)

Moreover, although the cited decisions of our Supreme Court make it quite clear that the election of judges is to be preferred over the gubernatorial power of appointment and election should be preferred whenever possible, the public policy concerns are pre-eminent only if the certainty of vacancy is present before commencement of the elective process. *Frank v. Allen,* 46 Pa. Commw. 393, 406 A.2d 838 (1976).

Indeed, our Supreme Court has repeatedly observed:

"[T]he purpose of [Article V] section 13 is to ensure that whenever possible, judicial officers shall be elected by a complete electoral process. The appointive process of section 13(b) was intended to fill a judicial vacancy only until the office could again be filled by a properly elected officer. The '10-month' provision was designed simply to insure that the electoral process would be complete with a regularly conducted primary election, as well as a

municipal election. It was not intended to frustrate the electoral process mandated in section 13(a)." *Berardocco v. Colden,* 469 Pa. 452, 366 A.2d 574 (1976). See also, *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329 (1977).

It is for this reason that the Supreme Court ruled as it did in the cases of *Rogers v. Tucker,* 443 Pa. 509, 279 A.2d 9 (1971) and *Jackson v. Davis,* 507 Pa. 626, 493 A.2d 687 (1985). Specifically, the *Jackson* case involved a declaratory judgment action by which a potential Commonwealth Court candidate sought to compel the Secretary of the Commonwealth to designate an opening on the court (which had arisen by the premature resignation of Judge Williams) as one for which candidates were to be nominated at the May 21, 1985 primary election. In denying the requested relief on the grounds that the vacancy occurred only some nine months prior to the next scheduled regular election, the court strictly adhered to the language of Article V, section 13 and held that the exceptions carved out in *Barbieri v. Shapp,* 476 Pa. 513, 383 A.2d 218 (1978) and *Berardocco v. Colden, supra* whereby election could be held for judicial and magisterial vacancies which arose less than 10 months before the next municipal election applied only in those situations where the resigning incumbent's term was due to expire and the seat was up for re-election at the next scheduled election.

Specifically, the court held:

"Reduced to its simplest terms, an election is required to fill a vacancy at the next municipal election that occurs more than 10 months after the vacancy arises. In the case sub judice the vacancy occurred on February 6, 1985. The 1985 municipal election is scheduled for November 5, 1985, approximately nine months subsequent. The mathematics

are clear enough. The petitioner, however, contends that while the numbers are incontestable, they do no mean what they seem to mean . . . *Barbieri* and *Berardocco* are clearly distinguishable from the present case. Here there was not an anticipated expiration of Judge Williams' term prior to the 10-month period. Judge Williams did not reach mandatory retirement age, and his term of office was not due to expire until 1990. The basis for the exception to the '10-month' provision carved out in the above case, i.e., an anticipated expiration of an incumbent's term, known to the public prior to 10 months preceding the municipal election, does not exist in this case . . . When, as here, an unantici-pated vacancy arises, we are not at liberty to deviate from that determination however small the inter-vening time. Otherwise the 10-month provision of section 13(b) is deprived of its purpose." *Jackson, supra.*

Similarly, in *Rogers v. Tucker,* Judge Rogers and certain taxpayers and citizens of Dauphin County instituted an equity action to revoke the notice and orders issued by the Secretary of the Common-wealth scheduling an election to fill the court va-cancy to which Judge Rogers had been appointed some nine months and 28 days before. In support of her position that the notices were proper, the Sec-retary of the Commonwealth relied, inter alia, upon Article IV, section 8(b) of the state Constitution. In affirming the Commonwealth Court's grant of the requested relief, the court, per Chief Justice Bell, resolved the constitutional conflict in favor of Article V, section 13 and stated:

"Article IV, section 8(b), which deals with the power of a governor to appoint an attorney general and other public officers in the executive branch of govenment is not applicable and certainly not con-

trolling when contrasted with Article V, section 13, which specifically and clearly and unambiguously applies to gubernatorial appointments in judicial offices.

. . .

"We believe that the hereinbefore-quoted language in Article V, section 13(b) with respect to the term of a person *appointed to fill a judicial vacancy* which occurs when the Senate is not in session or for an initial term ending on the first Monday of January following the next municipal election more than 10 months after the vacancy occurs, is clear and unambiguous and we have no right to disregard or distort its language even though we may believe it produces an unwise or unfortunate result. It follows expressly or by necessary implication that the election to fill the judicial vacancy which occurred on the resignation of Judge Barbieri on January 4, 1971, must be held at the municipal election in November 1973." *Rogers, supra.* (emphasis in original)

Applying the foregoing to the matter now before us, we find that while defandant is correct in its assertion that the *Jackson* and *Rogers* cases are distinguishable in that they did not involve candidates for district justice, we nevertheless find the Supreme Court's reasoning therein both persuasive and binding insofar as its interpretations of the constitutional provisions at issue here are concerned. Consequently, we too find that the specific language of Article V, section 13 controls over that of Article IV, section 8.

Instantly, the vacancy in District Court 15-3-04 occurred on July 19, 1989 which was some 15 weeks and six days before the November municipal

election. Accordingly, in placing the opening on the ballot, the defendant Board of Elections clearly failed to fulfill the 10-month waiting period mandated by Article V, section 13. This, we conclude, constituted error on the part of the board which may properly be remedied by granting plaintiff the injunctive relief sought here. See *Deer Creek Drainage Basin Authority v. County Board of Elections*, 475 Pa. 491, 381 A.2d 103 (1977).

In so ruling, we do not reach defendant's ancillary argument as to the non-necessity for certification of the vacancy by the Secretary of the Commonwealth. Indeed, by its own records, the County Board of Elections has never placed a district justice vacancy on the ballot without having first received the secretary's certification. (See finding of fact no. 11, *supra*.) In any event, the issue of whether the secretary does or does not have the authority to certify a vacancy in the office of district justice is irrelevent to our determination of whether the vacancy at bar should be filled by election or gubernatorial appointment, and we therefore decline to address it at this juncture.

## CONCLUSIONS OF LAW

(1) This court, sitting in law and equity has jurisdiction over the subject matter and the parties to this action pursuant to 42 Pa.C.S §§931 and 933.

(2) Injunctive relief is an available and appropriate remedy to the plaintiffs in this case.

(3) The action of the Chester County Board of Elections in placing the office of District Justice 15-3-04 on the ballot for the municipal election of November 7, 1989 is an unconstitutional act under Article V, section 13 of the Pennsylvania Constitution and is in direct contravention of the laws of the Commonwealth of Pennsylvania.

(4) Plaintiffs herein are entitled to relief in the form of an order enjoining defendant from taking any actions to place the vacancy in District Justice Court 15-3-04 on the ballot for the municipal election of November 7, 1989.

## ORDER

And now, October 6, 1989 following careful consideration of the pleadings, stipulations and arguments of the parties, and for the reasons set forth in the foregoing findings of fact, discussion and conclusions of law, it is hereby ordered that plaintiff's petition for special and preliminary injunctive relief be and is granted and defendant, its employees, agents and any and all persons authorized to act in and/or on its behalf are preliminarily enjoined from causing an election ballot to be prepared or printed which contains the office of district justice in Magisterial District 15-3-04 and from taking any other action in furtherance of an election to fill the said vacany in the election to be held on November 7, 1989.